IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-00154-M

**Shardamaya Inc.**,

    Plaintiff,

v.

**Owners Insurance Co.**,

    Defendant.

**Order**

In 2018, Hurricane Florence damaged property throughout eastern North Carolina, including a hotel in Wilmington, North Carolina owned by Plaintiff Shardamaya, Inc. In the storm's aftermath, Shardamaya turned to its insurer, Defendant Owners Insurance Co., to fix the damage. But disputes quickly arose over Owners' obligations to its insured, and those disputes ended up in this court.

Owners now asks the court to stay this matter. Def.'s Mot. to Stay, D.E. 16. It says a stay is appropriate because Shardamaya has not complied with its policy's requirement that the parties must participate in an appraisal process before resorting to litigation.

Both the policy and North Carolina law provide for an appraisal process to determine the amount of loss an insured sustained. But because the disputes here go beyond merely determining the amount of loss, the court declines to stay the case.

I.    **Background**

Shardamaya owns and operates a Comfort Inn hotel in Wilmington, North Carolina. Am. Compl. ¶ 4, D.E. 9. The hotel is insured under a policy with Owners. *Id.* ¶¶ 6–8. The policy covers damage from certain causes, including a windstorm. *Id.* ¶ 16. In September 2018, Hurricane

Florence hit Wilmington causing severe damage to the hotel. *Id.* ¶ 13. So Shardamaya filed a claim under the policy. *Id.* ¶ 14.

Shardamaya arranged an inspection with Owners's adjuster who brought in ServPro to inspect the damage and prepare for demolition and mitigation. *Id.* ¶¶ 8, 19–20. The parties soon ran into a disagreement about who had to pay ServPro. *Id.* ¶¶ 22, 28. So Shardamaya obtained a public adjuster who met with Owners's adjuster and ServPro. *Id.* ¶¶ 29, 30. From there, the relationship between Shardamaya and Owners continued to disintegrate and ultimately ServPro stopped its demolition and mitigation work due to lack of payment. *Id.* ¶¶ 34–36, 40. Shardamaya hired a new mitigation contractor to complete the demolition and mitigation work that remained because Owners maintained that it would not take responsibility if Shardamaya failed to mitigate damages. *Id.* ¶¶ 42–43. But Shardamaya and Owners continued to disagree about their respective responsibilities. *Id.* ¶ 48–49.

Shardamaya and Owners exchanged several communications outlining disagreements about the scope, causation, and cost of the damage. *Id.* ¶¶ 38–39, 45, 48–49, 50–51; Letter from Bolster to Hatfield (Apr. 28, 2021), D.E. 19–1. Shardamaya believes it has complied with the policy and is entitled to coverage, but Owners has failed to pay in accordance with the policy. Am. Compl. ¶ 59.

As part of their dispute, Shardamaya, through its adjuster, invoked the policy's appraisal provision. *Id*. ¶ 66. That provision allows either party to make a written demand for an appraisal of the loss amount by "competent and impartial" appraisers selected by the parties. *Id*. ¶ 67. Both parties selected appraisers, but the parties still disagree about the scope of the loss and coverage for the repairs. *Id.* ¶ 68.

2

Shardamaya has sued Owners for breach of contract, breach of covenant of good faith, and statutory violations, and asks the court to require Owners to select a different appraiser should the appraisal go forward.

## II. Discussion

Owners' motion presents the question of whether the court should stay this action until the parties have completed the policy's appraisal process.[1] The dispute is not whether the formal prerequisites for invoking the appraisal process have been met. They have. Instead, the disagreement is about whether disputes over coverage or the scope of loss must be resolved before the appraisers can determine the amount of Shardamaya's loss.

Under North Carolina law, parties are bound to honor the terms of an appraisal clause in an insurance policy.[2] *See Patel* v. *Scottsdale Ins. Co.*, 221 N.C. App. 476, 483–84, 728 S.E.2d 394, 399–400 (2012). But just because an insurance policy contains an appraisal clause does not mean that all disputes over that policy are subject to appraisal. Where, as here, the parties have only agreed to have the appraisers determine the amount of the loss, the appraisers may do no more than that. *High Country Arts & Crafts Guild* v. *Hartford Fire Ins. Co.*, 126 F.3d 629, 634 (4th Cir. 1997) (holding that since the policy only empowered the appraiser to determine the loss amount "the parties are not. . .bound by the appraiser's determination of coverage issues."); *N.C. Farm Bureau Mut. Ins. Co.* v. *Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 117 (2011) (explaining that the appraisal "process cannot exceed the scope of the contractual provisions authorizing it."). So "the policy's appraisal process is limited to a determination of the amount of loss and is not

---

[1] Owners claims that the policy required Shardamaya to complete the appraisal process before bringing suit. Given the court's finding that an appraisal cannot resolve the disputes involved here, it need not address this issue.

[2] Because this federal court sits in diversity in North Carolina, it "must apply the law as announced by the highest court of that state or, if the law is unclear, as it appears the highest court of that state would rule." *Brendle* v. *General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974).

intended to interpret the amount of coverage or resolve a coverage dispute." *Id.* at 183, 711 S.E.2d at 117.

Cases involving appraisal disputes process show the limits on an appraiser's authority. Appraisers may not address:

- A dispute over "which damages were directly caused by wind and covered under the policy[.]" *Id.*
- A disagreement about "which parts of the wind-related damages, if any, were directly caused by mold growth and thus limited to a specific maximum amount of fungi coverage under the policy." *Id.*
- Whether "some damage was caused by [the insured's] neglect of the charred restaurant rather than directly by the fire and [whether] the policy excluded that damage." *Glendale LLC* v. *Amco Ins. Co.*, No. 3:11-CV-00003, 2012 WL 1394746, at *5 (W.D.N.C. 2012).
- If a policy covered losses by theft and whether the fire that damaged a restaurant led to that theft. *Id.* at *6.
- Whether a policy covered the first 60 days of business income loss or whether it covered 12 months of business income loss. *High Country*, 126 F.3d at 634.
- Issues related to "the number of occurrences, the existence or scope of coverage. . ., and whether repair or replacement is appropriate." *Otto Indus. N. Am., Inc.* v. *Phoenix Ins. Co.*, No. 3:12-CV-00717, 2013 WL 2124163, at *2 (W.D.N.C. May 15, 2013).

On the other hand, one court has found that "appraisers appropriately excluded conditions that they determined were present before" the loss. *Glendale*, 2012 WL 1394746, at *5.

So which type of dispute is this: One involving an amount of loss and preexisting conditions or one involving coverage and causation issues?

The parties' filings establish that this case falls, mainly, into the latter category. For example, in response to an allegation that in March 2019 Owners had "disputed [the] scope of loss claimed," Am. Compl. ¶ 51, the insurer "admitted that [it] advised the insured on multiple occasions that the scope of the claimed loss was in dispute." Ans. ¶ 51, D.E. 17. And in response to an allegation that despite "proceed[ing] with an appraisal, it has refused to change its position on the scope of loss[,]" Am. Compl. ¶ 68, Owners admitted that "the scope of the insured's claimed

loss remains in dispute[,]" Ans ¶ 68. So it is the scope of Shardamaya's loss, not just the loss amount that is at issue.

The parties' pre-suit correspondence clarifies the nature of their dispute. In an April 2021 letter, Owners set out its position on several disputed items. D.E. 19–1. Among other things, it challenged whether "the need to replace" various items was the "result of hurricane-related damage." *Id.* at 2. And it rejected various reimbursement requests because Shardamaya's documentation did not "establish the reasonableness, necessity, or storm-relatedness of those expenses." *Id.* So at least some issues here involve determining "which damages were directly caused by [the hurricane] and covered under the policy[.]" *N.C. Farm Bureau Mut. Ins. Co.* v. *Saddler*, 365 N.C. 178, 183, 711 S.E.3d 114, 117 (2011). The appraisers cannot address these issues. *See id.* They can be resolved only after further factual development in this court.

In an attempt to avoid this conclusion, Owners points to *Glendale LLC* v. *Amco Insurance Co.*, No. 3:11-CV-00003, 2012 WL 1394748 (W.D.N.C. Apr. 23, 2012). As noted above, in *Glendale*, a court concluded that "the appraisers appropriately excluded conditions that they determined were present before the fire." *Id.* at * 5.

But, assuming that *Glendale*'s conclusion is correct, it provides little support to Owners' case. The April 2021 letter separately discusses Owners' concern that Shardamaya sought coverage for damage or deterioration that pre-dated the hurricane. Bolster Letter at 2. Given that this is just one of the issues in dispute, and that there are others the appraisers may not resolve, a dispute over preexisting damage does not justify staying this action.

### III. Conclusion

For these reasons, the court denies Owners' request to stay this matter pending the completion of the appraisal. D.E. 16.

5

Dated: March 7, 2022

_____
Robert T. Numbers, II
United States Magistrate Judge